Argued and submitted March 26, reversed and
remanded April 28, reconsideration denied June 5,
petition for review allowed September 3, 1980
See later issue Oregon Reports

MILLER,
*Petitioner,*
*v.*
EMPLOYMENT DIVISION, et al,
*Respondents.*

(ABD No. 79-AB-380, CA 14548)

610 P2d 293

L. Ramsay Weit, Portland, argued the cause and filed the briefs for petitioner.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Paul R. Romain, Portland, argued the cause for respondent Union Gospel Mission of Portland. With him on the brief was Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

**CAMPBELL, J.**

Petitioner appeals from an order of the Employment Appeals Board (EAB) reversing the order of the referee and ruling that the paid services performed by petitioner for his employer, Union Gospel Mission, were not "employment" under ORS 657.072. As a result of this ruling, petitioner did not qualify for unemployment compensation since he did not have at least 18 weeks of work in subject employment in his base year. ORS 657.150(2). We hold that the services were covered "employment," and reverse and remand.

The following pertinent facts, found by the referee and adopted by the EAB, are unchallenged. From July 1977 to March 1978, petitioner worked for Union Gospel Mission (UGM). UGM is a church or association of churches which, as an Oregon nonprofit corporation, is an organization described in Section 501(c)(3) of the U.S. Internal Revenue Code, and is exempt from income tax under section 501(a) of that Code. UGM operates a thrift store, where it sorts, cleans, and sells donated articles. The store is operated to earn, and does earn, a profit which is used to support UGM's religious facilities and activities. Petitioner worked primarily as a truck driver, picking up donated articles. He was not involved in any of UGM's religious activities.

The referee concluded that under ORS 657.072(1)(a)(A) and OAR 471-31-090(2), petitioner's services were covered employment. The EAB reversed, ruling that the administrative rule relied upon by the referee exceeded the range of interpretation delegated to the Employment Division by statute.

ORS 657.072 provides in part:

"(1) 'Employment' does not include service performed:
"(a) In the employ of
"(A) A church or convention or association of churches;

"(B) An organization which is operated primarily for religious purposes and which is operated, supervised, controlled or principally supported by a church or convention or association of churches;

"(b) By a duly ordained, commissioned or licensed minister of a church in the exercise of his ministry or a member of a religious order in the exercise of duties required by such order; or

" * * * * * * "

OAR 471-31-090(2)(a) provides:

"(2) Nothing in ORS 657.072 and this section shall be construed as exempting from employment:

"(a) Services performed for a church, convention, or association of churches when such services are in furtherance of a trade or business for profit for such organization."

This case presents facts similar to those in *Shiloh Youth Revival Center v. Emp. Div.,* 44 Or App 81, 605 P2d 704 (1980), although here we are determining petitioner's eligibility for benefits rather than an employer's liability for unemployment tax as in *Shiloh. Shiloh* involved a church, some of the operations of which, such as a reforestation program, a grocery store, and a laundromat, were conceded by the employer to be trades or businesses. We upheld a referee's ruling that the work activities at issue were "services in furtherance of a trade or business for profit" under OAR 471-31-090(2)(a) and were, therefore, not exempt from unemployment tax liability "merely because they were performed under the auspices of a nonprofit organization." 44 Or App at 85. The critical difference between this case and *Shiloh* is that, unlike in *Shiloh,* the employer here has challenged the administrative rule as inconsistent with ORS 657.072.

We first address the question whether interpretation of ORS 657.072 is initially for the agency. The statutory phrase in question, " In the employ of . . . [a] church or convention or association of churches," ORS

657.072(1)(a)(A), does not call "for completing a value judgment that the legislature itself has only indicated." *McPherson v. Employment Division,* 285 Or 541, 550, 591 P2d 1381 (1979). Rather, as agreed by the parties on oral argument, construction of that language is a question of law for the court. *See Taylor v. Employment Division,* 286 Or 711, 597 P2d 780 (1979); *Oliver v. Employment Division,* 40 Or App 487, 595 P2d 1252 (1979).

Our scope of review is that provided for review of orders in contested cases in ORS 183.482. ORS 657.282. The issue here is whether "the agency has erroneously interpreted a provision of law and * * * a correct interpretation compels a particular action." ORS 183.482(8)(a). In interpreting exemptions from unemployment coverage, we are mindful that the purpose of the unemployment compensation scheme is to extend coverage to as many workers as possible. "In accordance with this legislative purpose, all exemptions must be narrowly construed." *Shiloh Youth Revival Center v. Emp. Div., supra,* 44 Or App at 85.

In challenging the administrative rule, the employer argues that the statutory language is clear and unambiguous and, therefore, must be given its plain meaning. *See Monaco v. U.S. Fidelity & Guar.,* 275 Or 183, 550 P2d 422 (1976). Since UGM is a "church or convention or association of churches," and petitioner performed the services in UGM's employ, the services are not covered "employment." Petitioner contends that a literal reading of the statute would create a harsh result at variance with the legislative intent.

We may not amend a statute by construction so as to accomplish a desired result. As the Oregon Supreme Court stated in *Johnson v. Star Machinery Co.,* 270 Or 694, 703-04, 530 P2d 53 (1975), however:

> "[T]he rule requiring the court to follow the plain meaning of seemingly unambiguous language is not inflexible and not without exceptions. Hence, if the literal import of the words is so at variance with the

apparent policy of the legislation as a whole as to bring about an unreasonable result, the literal interpretation must give way and the court must look beyond the words of the act."

In *Mallon v. Emp. Div.,* 41 Or App 479, 599 P2d 1164 (1979), the Employment Division proferred an interpretation based on a literal reading of a statute. We stated:

"* * * In construing a statute we are mindful that we have no authority to amend a statute by interpretation simply to accomplish a desired result. However, in determining the meaning of the words used we can properly consider the legislative purpose and construe the language to reasonably accomplish this purpose. We may also presume the legislature did not intend the harsh results that a literal application of the statutory terms would seem to require." 41 Or App at 484.

We observe that under ORS 657.072(1)(a)(B), services performed in the employ of separate but church-controlled organizations operating businesses for profit are eligible for treatment as "employment." Under the employer's suggested interpretation of ORS 657.072(1)(a)(A), services performed for a similar trade or business *within the church entity,* such as the UGM thrift store, do not qualify as "employment." Thus, the form of the business entity rather than the services performed would be determinative. Large numbers of workers otherwise eligible for benefits would be disqualified, and churches would be encouraged to shelter profit-making subsidiaries within the church itself so as to avoid liability for unemployment tax. We doubt that the legislature intended this triumph of form over substance, which is antithetical to the purpose of the unemployment compensation system. As the referee aptly stated:

"It can hardly be supposed that the legislature intended that a church could operate a vast and successful commercial empire through the labors of individuals not involved in the religious aspects of

the employer's activities without those workers having any security or resource when they are without jobs."

The employer points to ORS 657.072(1)(a)(B) and (1)(b) as support for its contention that the legislature did intend to disqualify petitioner from unemployment compensation in the circumstances presented here. Those sections exclude from coverage services performed for organizations "operated primarily for religious purposes," ORS 657.072(1)(a)(B), and labor performed by a minister "in the exercise of his ministry" or by a member of a religious order "in the exercise of duties required by such order." ORS 657.072(1)(b). In contrast, ORS 657.072(1)(a)(A) contains no similar qualifying language. This fact leads the employer to conclude, under the maxim "expressio unius est exclusio alterius," that the legislature intended not to limit the exclusion from coverage of services performed in the employ of a church to services connected with the church's religious activities.

The maxim cited by the employer is not a rule of law, and is to be applied cautiously and merely as an auxiliary rule to determine legislative intent. *Cabell et al v. Cottage Grove et al,* 170 Or 256, 130 P2d 1013 (1942). Unlike the legislation at issue in *Cabell,* the provisions before us do not exclude the analysis stated in *Lowe v. Dorling & Son,* (1906), 2 K. B. 772, 785:

"The failure to make the 'expressio' complete very often arises from accident, very often from the fact that it never struck the draftsman that the thing supposed to be excluded needed specific mention of any kind." *Quoted in Cabell et al v. Cottage Grove et al, supra,* 170 Or at 281.

A restriction of churches or church work activities to those with a primarily religious purpose might reasonably be thought to be redundant.

Since the same work activities are covered "employment" for benefits purposes and tax purposes, unemployment tax cases may aid our analysis of the exclusion from coverage at issue here. We noted in *Shiloh,*

that "Even where an organization is generally exempt, some of its activities may be subject to tax if they do not relate sufficiently to the exempt purpose." 44 Or App at 89. In other tax contexts it is settled that "an exempt organization cannot run a business for profit and avoid taxation by passing the profits through the organization. *Corp. of Presiding Bishop v. Dept. of Rev.,* 276 Or 775, 778, 556 P2d 685 (1976)." 44 Or App at 86.

We conclude that petitioner's work activities were covered "employment." Reversed and remanded.

### GILLETTE, P. J., dissenting.

However desirable the result reached by the majority may appear to be, I believe it is precluded by the doctrine of *inclusio unius est exclusis alterius.* I respectfully dissent.